﻿Citation Nr: AXXXXXXXX
Decision Date: 03/22/19 Archive Date: 03/22/19

DOCKET NO. 181127-1340
DATE: March 22, 2019

ORDER

Entitlement to service connection for diabetes mellitus, type II, is granted.

Entitlement to service connection for ischemic heart disease status post (s/p) myocardial infarction and angioplasties with stent placement is granted.

Entitlement to service connection for left lower extremity peripheral neuropathy as secondary to service-connected diabetes type II is granted.

Entitlement to service connection for right lower extremity peripheral neuropathy as secondary to service-connected diabetes type II is granted.

Entitlement to service connection for erectile dysfunction, to include as secondary to diabetes mellitus type II, is granted.

REMANDED

Entitlement to service connection for left upper extremity peripheral neuropathy as secondary to diabetes type II is remanded.

Entitlement to service connection for right upper extremity peripheral neuropathy as secondary to diabetes type II is remanded.

FINDINGS OF FACT

1. The Veteran is presumed to have been exposed to herbicides during his military service.

2. The Veteran’s diabetes mellitus type II was presumptively caused by in-service herbicide exposure, as there is no affirmative evidence to the contrary.

3. The Veteran’s ischemic heart disease was presumptively caused by in-service herbicide exposure, as there is no affirmative evidence to the contrary.

4. The Veteran’s left lower extremity peripheral neuropathy has been caused by his diabetes mellitus type II.

5. The Veteran’s right lower extremity peripheral neuropathy has been caused by his diabetes mellitus type II.

6. The Veteran’s erectile dysfunction has been caused by his service-connected disability.

CONCLUSIONS OF LAW

1. The criteria for service connection for diabetes mellitus, type II, have been met. 38 U.S.C. §§ 1110, 1116, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.307, 3.309(e) (2018).

2. The criteria for service connection for ischemic heart disease s/p myocardial infarction and angioplasties with stent placement have been met. 38 U.S.C. §§ 1110, 1116, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.307, 3.309(e).

3. The criteria for service connection for left lower extremity peripheral neuropathy as secondary to service-connected diabetes type II have been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.310.

4. The criteria for service connection for right lower extremity peripheral neuropathy as secondary to service-connected diabetes type II have been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.310.

5. The criteria for service connection for erectile dysfunction as secondary to service-connected disability have been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.310

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from July 1967 to July 1987.

This appeal comes before the Board of Veterans’ Appeals (Board) from an October 2018 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) (hereinafter Agency of Original Jurisdiction (AOJ)). The Veteran has elected direct review of the AOJ decision by the Board pursuant to the Rapid Appeals Modernization Program. 

The Board observes that the issues on appeal were initially denied in an AOJ rating decision dated August 2014. The AOJ asserts that this claim had become final due to failure to appeal the adverse rating decision within one year of notice of decision. The Veteran has appealed this determination arguing that evidence and argument submitted in March 2015 should be construed as a timely filed Notice of Disagreement (NOD). The Board has reviewed the May 2015 filing and finds that the Veteran had submitted new and material evidence pertaining to the underlying issue of herbicide exposure and, as such, the August 2014 decision did not become final as the claim required readjudication. 38 C.F.R. § 3.156(b). See generally Beraud v. McDonald, 766 F. 3d. 1402 (Fed. Cir. 2014) (holding that claim remains pending even after a subsequent adjudication when VA fails to make 3.156(b) determination of new evidence received). Thus, the issue of whether the May 2015 correspondence constituted an NOD is rendered moot.

Service Connection

Under applicable VA law, service connection may be established for disability resulting from personal injury suffered or disease contracted in line of duty in the active military, naval, or air service. 38 U.S.C. §§ 1110, 1131. Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d).

In order to establish service connection, the following must be shown: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Service connection may be established on a secondary basis for a disability that is proximately due to or the result of service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. 38 C.F.R. § 3.310(a); Allen v. Brown, 7 Vet. App. 439 (1995) (en banc), reconciling Leopoldo v. Brown, 4 Vet. App. 21 (1993), and Tobin v. Derwinski, 2. Vet. App. 34 (1991).

Additionally, for Veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, such as diabetes mellitus, are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. 

Alternatively, when a disease at 38 C.F.R. § 3.309(a) is not shown to be chronic during service or the one-year presumptive period, service connection may also be established by showing continuity of symptomatology after service. See 38 C.F.R. § 3.303(b). However, the use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309(a) and does not apply to other disabilities which might be considered chronic from a medical standpoint. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

A Veteran who served on active duty in the Republic of Vietnam during the period from January 9, 1962 to May 7, 1975 (Vietnam War Era) shall be presumed to have been exposed to an herbicide agent during active service, unless there is affirmative evidence to the contrary. 38 C.F.R. § 3.307 (a). Service in the Republic of Vietnam includes service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam. 38 C.F.R. §§ 3.307(a)(6)(iii), 3.313. Furthermore, there is a presumption of service connection for a Veteran who was exposed to an herbicide agent during active service and is diagnosed with a qualifying disability, such as type II diabetes mellitus and ischemic heart disease, that manifested to a compensable degree at any time after service, unless there is affirmative evidence to show that the disease is not related to exposure to an herbicide agent. 38 U.S.C. § 1116; 38 C.F.R. §§ 3.307(a)(6)(iv), 3.309(e). 

The Board notes that there are no statutory or regulatory presumptions regarding herbicide exposure in Thailand. However, VA will presume that a Veteran who served in Thailand during the Vietnam War Era was exposed to herbicide agents if: (1) the Veteran was in the Air Force, (2) the Veteran served at the Royal Thai Air Force Bases of U-Tapao, Ubon, Nakhon Phanom, Udorn, Takhli, Korat, or Don Muang, and (3) the Veteran served as a security policeman, security patrol dog handler, or member of a security police squadron, or otherwise served near a base perimeter, as shown by the Veteran’s military occupational specialty (MOS), daily work duties, performance evaluations, or other credible evidence.

If a veteran was exposed to an herbicide agent during active military, naval, or air service, service connection for certain diseases, including DM II, may be established on a legal presumption based on herbicide exposure where a veteran served on active duty in the Republic of Vietnam during the Vietnam era. See 38 U.S.C. § 1116; 38 C.F.R. § 3.307(a)(6)(iii). 

Once the evidence has been assembled, it is the Board’s responsibility to determine whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 C.F.R. §§ 3.102, 4.3.

The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. The Board must analyze the credibility and probative value of the evidence, account for the persuasiveness of the evidence, and provide reasons for rejecting any material evidence favorable to the claimant. Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff’d per curiam, 78 F.3d 604 (Fed.Cir.1996). The Board assesses both medical and lay evidence. In addressing lay evidence and determining its probative value, if any, attention is directed to both competency (“a legal concept determining whether testimony may be heard and considered”) and credibility (“a factual determination going to the probative value of the evidence to be made after the evidence has been admitted”). See Layno v. Brown, 6 Vet. App. 465, 469 (1994).

In evaluating a claim, the Board must determine the value of all evidence submitted, including lay and medical evidence. Buchanan v. Nicholson, 451 F.3d 1331, 1335 (2006). The evaluation of evidence generally involves a three-step inquiry. First, the Board must determine whether the evidence comes from a “competent” source. Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (providing that a Veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis if (1) the medical issue is within the competence of a layperson, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007).

If the evidence is competent, the Board must then determine if the evidence is credible, or worthy of belief. Barr v. Nicholson, 21 Vet. App. 303, 308 (2007) (observing that once evidence is determined to be competent, the Board must determine whether such evidence is also credible). After determining the competency and credibility of evidence, the Board must then weigh its probative value. In this regard, the Board may properly consider internal inconsistency, facial plausibility, and consistency with other evidence submitted on behalf of the claimant. Caluza v. Brown, 7 Vet. App. 498, 511-12 (1995).

The benefit of the doubt rule provides that a veteran will prevail in a case where the positive evidence is in a relative balance with the negative evidence. Therefore, the Veteran prevails in a claim when (1) the weight of the evidence supports the claim or (2) when the evidence is in equipoise. It is only when the weight of the evidence is against the claim that the claim must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

1. Entitlement to service connection for diabetes mellitus, type II.

The Veteran asserts that his diagnosed diabetes mellitus was due to service, to include as due to herbicide or other hazardous exposure. 

In a December 2012 Statement in Support of Claim, the Veteran reported that he was stationed at Korat and U-Tapao Air Bases and that:

The munitions storage area (bomb dump) was at the outermost perimeter of the base away from all other areas of the base. The area on both sides of the fence Was always kept clear of all vegetation for several hundred yards, usually by spraying or cutting, so that the unauthorized personnel could be seen. A truck drove around the base to spray some chemical to kill mosquitos day and night. A person usually had to walk through this spray at least 2 or 3 times a day during normal activity. I was either a crew chief or crew member working on bomb assembly, mixing napalm, storage of various conventional and chemical munitions. Other duties were to deliver munitions to and from the flight line and support aircraft, which included F-4s and F-105s flying to and from Vietnam, which I came into contact with in my activities on the flight line…I also worked with explosive ordinance disposal (EOD) personnel on several jobs which took place about five (5) miles into the jungle, accessed by a road from the bomb dump to the site. All of which was clear of vegetation. Here we detonated munitions that were unfit for use, or which had come back from a mission where they could not be dropped for some reason…The munitions storage area (bomb dump) Was also on the outer perimeter of the base and the fence line was kept clear of vegetation for several hundred yards on either side of the fence…My duties included assembly and storage of munitions of all types (some chemical) and delivery to and from aircraft on the flight line and perimeter checks.

The Veteran’s service personnel records (SPRs) indicate that he served in Thailand on two temporary duty (TDY) assignments of six months. It was confirmed that he served in Thailand as a munitions maintenance specialist. His service evaluations also indicate that he “supervises crews that receive, inspect, assemble and disassemble general purpose bombs and CBU munitions.” 

The Veteran provided photographs of various locations on Thai Air Bases, purporting to show proximity to the base perimeter. These photographs show locations of munitions holding areas near fence line.

The Veteran did not overly embellish his accounts of his time in the Republic of Thailand, thus lending them further credibility in the eyes of the Board. Further, given the amount of time that the Veteran served as a munitions specialist disassembling munitions in Thailand during the Vietnam War, it is plausible that he would work in areas removed from the flight line and other populated areas. 

Additionally, it is entirely plausible that the Veteran was called upon to augment security operations that were not documented in official records. Furthermore, the Veteran has recounted several other experiences, including the nature of his military duties in Thailand, which lends further credibility to his attestations. Therefore, the Veteran’s statement that he had significant service near the perimeter of Thai Air Bases seems more than plausible. 

As such, the Board finds that the Veteran’s statements that he served along the perimeter of Thai Air Bases to be both competent and highly credible. Therefore, the Board concedes the Veteran’s exposure to herbicides during his active service. 

As noted above, if a Veteran was exposed to an herbicide agent during active military, naval, or air service, certain enumerated diseases shall be service connected if the requirements of 38 U.S.C. § 1116; 38 C.F.R. § 3.307(a)(6)(iii) are met, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 U.S.C. § 1113; 38 C.F.R. § 3.307(d) are also satisfied. 38 C.F.R. § 3.309(e). Diabetes mellitus type II is one of the enumerated diseases. Therefore, the Veteran has a qualifying condition.

In sum, the Board has conceded the Veteran’s exposure to herbicides during active service and the record confirms that the Veteran has been diagnosed with type II diabetes mellitus. Accordingly, entitlement to service connection for type II diabetes mellitus is warranted. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

2. Entitlement to service connection for ischemic heart disease s/p myocardial infarction and angioplasties with stent placement.

The Veteran had asserted that his diagnosed heart condition, to include ischemic heart disease, due to service, to include as due to herbicide exposure. The Board notes that the medical evidence indicates diagnosed conditions of ischemic heart disease.

As noted above, if a Veteran was exposed to an herbicide agent during active military, naval, or air service, certain enumerated diseases shall be service connected. Ischemic heart disease is one of the enumerated diseases. Therefore, the Veteran has a qualifying condition.

In sum, the Board has conceded the Veteran’s exposure to herbicides during active service and the record confirms that the Veteran had been diagnosed with ischemic heart disease. Accordingly, entitlement to service connection for ischemic heart disease is warranted. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

3. Entitlement to service connection for left lower extremity peripheral neuropathy, to include as secondary to diabetes mellitus type II.

4. Entitlement to service connection for right lower extremity peripheral neuropathy, to include as secondary to diabetes mellitus type II.

The Veteran also claims entitlement to service connection for bilateral lower extremity peripheral neuropathy claimed as secondary to diabetes mellitus type II. 

A July 2015 treatment note indicates that the Veteran has diabetic peripheral neuropathy of the lower extremities. Similarly, podiatry notes indicate that the Veteran has been prescribed orthotic shoes to deal with diabetic foot pain.

The Board finds that the Veteran has current diagnoses of bilateral lower extremity peripheral neuropathy that have been attributed to now service-connected diabetes mellitus, type 2. There is no competent opinion to the contrary. Accordingly, secondary service connection is established for left and right lower extremity peripheral neuropathy. 38 C.F.R. § 3.310.

5. Entitlement to service connection for erectile dysfunction

The Veteran also claims entitlement to service connection for erectile dysfunction claimed as secondary to diabetes mellitus type II. 

The Veteran’s treatment records indicate that he has erectile dysfunction, with a diagnosis in May 2012. A May 2012 private medical note states that the Veteran’s erectile dysfunction was “likely related in part to diabetes.” Thus, the May 2012 private medical note is positive evidence of a nexus between the Veteran’s erectile dysfunction and diabetes mellitus type II. 

However, there is contrary evidence which includes a report from the Veteran that he had symptoms of erectile dysfunction in 2001.

In a June 2014 VA examination, the examiner noted that “he has had some ‘pre-diabetes’ but his med list currently does not include any meds for diabetes mellitus and this began just a few years ago, about a decade after his erectile dysfunction occurred.” The examiner noted that the Veteran was diagnosed with diabetes in June 2014. The examiner also noted

I suspect it is related to a significant surgical procedure, an aortobifem bypass, performed in the same year, 2001 that he gives for the onset of his erectile dysfunction. He had a hydrocele repair in the 1970’s, unrelated. He had a left testicle surgery for a cyst in 2001. It is far more likely that any erectile dysfunction followed the aortobifem procedure rather than a testicle cyst removal (which I bet was another hydrocele).

The Board finds that there is some question in the record regarding the onset of erectile dysfunction and its etiology. A private examiner attributed erectile dysfunction as being due to diabetes mellitus while a VA examiner attributed to surgery for the now service-connected ischemic heart disease. As these two potential etiologies are service-connected, the Board resolves reasonable doubt in favor of the Veteran and finds that his erectile dysfunction is due to service-connected disability.

REASONS FOR REMAND

1. Entitlement to service connection for left upper extremity peripheral neuropathy as secondary to diabetes type II is remanded.

2. Entitlement to service connection for right upper extremity peripheral neuropathy as secondary to diabetes type II is remanded.

As noted above, the appeal before the Board comes under RAMP. In pertinent part, the Board’s authority is limited to review of the evidence before the AOJ at the time of its initial decision and its remand authority is largely limited to correcting pre-adjudicatory duty to assist errors. Here, the Board finds that the Veteran had submitted sufficient evidence at the time of the initial decision to establish his exposure to herbicides in service and, thus, his entitlement to service connection for diabetes mellitus. In light of the established diagnosis of diabetic neuropathy of the lower extremities and lay complaints of similar symptoms in the upper extremities, the Board finds that VA had a duty to assist at the time of the initial adjudication to clarify whether the Veteran manifests diabetic neuropathy of the upper extremities. 

The matter is REMANDED for the following action:

1. Obtain all outstanding VA and private medical records and associate them with the virtual claims file. 

2. Afford the Veteran an examination to determine the current nature and etiology of his reported bilateral upper extremity symptomatology, to include peripheral neuropathy. The claims folder contents must be made available for review by the examiner. 

The examiner should address the following:

a) Identify any current diagnosis for symptoms related to the bilateral upper extremities, to include consideration of diabetic neuropathy.

b) For each diagnosis, provide an opinion as to whether it is at least as likely as not (i.e. 50 percent or greater probability) that such is related to service.

c) For each diagnosis, provide an opinion as to whether it is at least as likely as not (i.e. 50 percent or greater probability) that such is proximately due to and/or aggravated by a service-connected disability. Aggravation is defined as the permanent worsening beyond the natural progression of the disease.

A complete rationale should be provided for any opinion rendered.

 

T. MAINELLI

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Michael J. O'Connor